The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS
JOHN J. KORESKO, V, ESQ., PENNMONT BENEFIT SERVICES, INC., KORESKO & ASSOCIATES, PC and PENN PUBLIC TRUST;

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF:
**Montgomery County, Pennsylvania**

(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
John J. Koresko, V, Esq.
Koresko Law Firm, P.C.
200 W. 4th Street
Bridgeport, PA 19405

## DEFENDANTS
TD BANK, N.A.

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT:
**New Castle County, Delaware**

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

ATTORNEYS (IF KNOWN)
H. Marc Tepper
Buchanan, Ingersoll & Rooney P.C.
Two Liberty Place, 50 S. 16th Street Suite 3200
Philadelphia, PA 19102-2555

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PL | DEF | | PL | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA(1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIW W (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 501 Motions to Vacate Sentence Habeas Corpus: | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | | | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 540 Mandamus & Other | | ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Right | ☐ 550 Civil Rights | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/ Disabilities -Other | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of State Statutes |

## V ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY) 28 U.S.C. § 1332
Brief description of case: Claims for declaratory judgment and unjust enrichment to recover monies allegedly wrongfully transferred.

## VII. REQUEST IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

**DEMAND $** approximately forty million dollars

Check YES only if demanded in complaint
**JURY DEMAND:** ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions): JUDGE C. Darnell Jones   DOCKET NO. 2:09-cv-00988-CDJ (SOLIS v. KORESKO et al)

DATE
November 3, 2009

SIGNATURE OF ATTORNEY OF RECORD

For office use only
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

--------------------------------------------------------------------x
                                                                    :
**JOHN J. KORESKO, V, ESQ., PENNMONT**                              :
**BENEFIT SERVICES, INC., KORESKO &**                               :
**ASSOCIATES, PC and PENN PUBLIC TRUST,**                           :
                                                                    :
        *Plaintiffs,*                              :
                                                                    :        **Civil Action No. _____**
    **v.**                                                    :
                                                                    :
**TD BANK, N.A.,**                                                  :
                                                                    :
        *Defendant*                              :
                                                                    :
                                                                    :
-------------------------------------------------------------------- x

## NOTICE OF REMOVAL

      PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. § § 1331, 1441, and 1446, defendant TD Bank, N.A. ("TD Bank") hereby respectfully removes the above-captioned action from the Court of Common Pleas of Montgomery County, Pennsylvania, to the United States District Court for the Eastern District of Pennsylvania. In support of its Notice of Removal, TD Bank states the following:

      1.     On October 28, 2009, plaintiffs John J. Koresko, V, Esq., Pennmont Benefits Services, Inc., Koresko & Associates, PC, and Penn Public Trust (the "Plaintiffs"), by and through their attorneys, instituted an action by filing a Petition for Declaratory Judgment, Turnover of Fiduciary Property, and Other Legal and Equitable Relief in the Court of Common Pleas of and for Montgomery County (the "Complaint").

      2.     A true and correct copy of the Complaint, as filed with the Court of Common Pleas, is attached hereto as Exhibit 1.

3.    Defendant TD Bank was notified of the Complaint by electronic mail on October 29, 2009, but has not yet been formally served with process.

4.    Fewer than 30 days have passed since the defendant received notice of the Complaint; this Notice of Removal is therefore timely filed pursuant to 28 U.S.C. § 1446(b).

5.    TD Bank is a national banking association, with current articles of association listing its main offices as located at 2035 Limestone Road, Wilmington, Delaware 19808.  TD Bank is a citizen of Delaware pursuant to 28 U.S.C. § 1348.

6.    According to the face of the Complaint, plaintiff PennMont Benefit Services, Inc. is a Pennsylvania corporation doing business at 200 W. 4th St., Bridgeport, Pennsylvania.  Complaint ¶ 14.  That plaintiff is therefore a citizen of Pennsylvania pursuant to 28 U.S.C. § 1332(c)(1).

7.    According to the face of the Complaint, plaintiff Penn Public Trust is a Pennsylvania nonprofit corporation doing business at 200 W. 4th St., Bridgeport, Pennsylvania.  Complaint ¶ 16. That plaintiff is therefore a citizen of Pennsylvania pursuant to 28 U.S.C. § 1332(c)(1).

8.    According to the face of the Complaint, plaintiff Koresko & Associates PC is a Pennsylvania corporation doing business at 200 W. 4th St., Bridgeport, Pennsylvania.  Complaint ¶ 17.  That plaintiff is therefore a citizen of Pennsylvania pursuant to 28 U.S.C. § 1332(c)(1).

9.    Upon information and belief, plaintiff John J. Koresko, V, is an individual resident of Pennsylvania.  Koresko is therefore a citizen of Pennsylvania pursuant to 28 U.S.C. § 1332(a).

10. According to the face of the Complaint, the amount in controversy in this matter exceeds $100,000. Complaint ¶ 9.

11. As a civil action between citizens of different states, where the matter in controversy exceeds $75,000, this Court has original jurisdiction over the claims set forth in the Complaint under 28 U.S.C. § 1332.

12. 28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

13. Because this is an action over which federal district courts have original jurisdiction by virtue of diversity jurisdiction, and because Montgomery County is within the Eastern District of Pennsylvania, this action is properly removed to the United States District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 1441(a).

14. The defendant does not waive any defenses, objections, exceptions, or motions by filing or consenting to this Notice of Removal.

15. TD Bank will promptly give notice of the filing of this Notice of Removal to all adverse parties and shall file a copy with the Court of Common Pleas of Montgomery County, in compliance with 28 U.S.C. § 1446(d).

16. Under these circumstances, removal is proper.

WHEREFORE, this action is hereby removed from the Court of Common

Pleas of Montgomery County, Pennsylvania to the United States District Court for the

Eastern District of Pennsylvania.

**BUCHANAN INGERSOLL & ROONEY PC**

**H. Marc Tepper (PA Id. No. 49084)**
marc.tepper@bipc.com
Two Liberty Place
50 S. 16th St., Suite 3200
Philadelphia, PA 19102-2555
Phone: 215-665-3864
*Attorneys for TD BANK, N.A., Plaintiff in*
*Intervention*

Of Counsel:
**Tod S. Chasin, Esquire**
tod.chasin@bipc.com
**Nola R. Bencze, Esquire**
nola.bencze@bipc.com
BUCHANAN INGERSOLL & ROONEY PC
700 Alexander Park, Ste 300
Princeton, NJ  08540-6347


Dated:  November 3, 2009

## CERTIFICATE OF SERVICE

I certify that on November 3, 2009, I served a true and correct copy of the foregoing Notice of Removal, upon the following via first class United States Mail:

>       John J. Koresko, V, Esq.
>       Koresko Law Firm, P.C.
>       200 W. 4th Street
>       Bridgeport, PA 19405

_____
H. Marc Tepper

EXHIBIT 1

Koresko Law Firm, P.C.
By:    John J. Koresko, V, Esquire (I.D. 42795)
200 W. 4th St.
Bridgeport, PA 19405
Tel 610-992-2200 Attorneys for PETITIONERS

## COURT OF COMMON PLEAS, MONTGOMERY COUNTY, PENNSYLVANIA
### ORPHANS' COURT DIVISION

IN RE:  REAL VEBA AND SEWP TRUST ACCOUNTS

NO. _09-24758_

JOHN J. KORESKO, V, ESQUIRE  PENNMONT BENEFIT SERVICES, INC., *Settlor.*
KORESKO & ASSOCIATES, PC and PENN PUBLIC TRUST, a Pennsylvania nonprofit
corporation, for themselves and as fiduciaries,
Petitioners,

vs.

T.D. Bank, N.A.
Respondent

## PETITION FOR DECLARATORY JUDGMENT,
## TURNOVER OF FIDUCIARY PROPERTY,
## AND OTHER LEGAL AND EQUITABLE RELIEF

PETITIONERS, by their undersigned counsel, respectfully allege as follows:

### I.    NATURE OF THE ACTION

1.    This is an action to obtain equitable, declaratory and other appropriate relief against TD

Bank which, without notice or reason, and without legal privilege to do so, unilaterally decided

to freeze approximately $40,000,000 of funds owed to PETITIONERS as attorneys and

fiduciaries, and hold the beneficiaries of two Trusts hostage.

2.    This is also an action to recover equitable restitution, turnover, declaratory relief,

Scan 10/26/2009

injunctive relief, and appropriate damages at law against BANK for breach of its duties to

PETITIONERS and the persons who are in privity to PETITIONERS under certain Trusts.

3.      PETITIONERS allege that BANK procured money from PETITIONERS by

misrepresenting the nature of the banking relationship PETITIONERS would have if

PETITIONERS placed moneys into BANK. PETITIONERS seek appropriate equitable relief,

consequential and compensatory damages, statutory treble damages, punitive damages, interest

and costs, and attorney and expert fees incurred by PETITIONERS to recover the amounts

rightfully due and owing.

4.      In the absence of an injunction, the ability of PETITIONERS to perform their fiduciary

duties, operate their businesses, and pursue their livelihoods will be destroyed and irreparably

harmed.  Furthermore, the amounts unlawfully detained by BANK and not committed to

productive investments harm the beneficiaries of the fiduciary relationships whom

PETITIONERS are called to protect.  The calculable damages are approximately $10,000 per

day, or more, as several hundred millions of dollars of insurance coverage is being jeopardized

by BANK's outrageous actions; but the vast majority of the damage being caused by BANK is

either incapable of calculation or unable to be remedied at law.

5.      Bank's intentions are unclear with respect to other accounts maintained by

PETITIONERS, amounts believed to exceed several million dollars; so additional and complete

relief is sought in this action.

6.      BANK possesses funds that must be applied for the benefit of over 100 beneficiaries of

the Trusts or valuable rights of those beneficiaries may be lost.

7.      If Petitioners had been aware of the intentions of BANK with respect to the treatment of

PETITIONERS and their depositary arrangements, PETITIONERS would not have under any

circumstance ever done business with BANK.

8.    The conduct of BANK was and is outrageous, constitutes oppression, fraud and malice beyond legal privilege, and was done with willful and conscious disregard for the rights of PETITIONERS and beneficiaries. By reason of such conduct, PETITIONERS believes it is entitled to recover special damages from BANK under established notions of equity and any applicable law.

## II. JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 20 PA.C.S. §§ 711 and 712. The amount in controversy exceeds $100,000.

10.    Venue is proper in this Court because the events that damaged PETITIONERS either took place in this Commonwealth or were intentionally directed toward PETITIONERS in this Commonwealth so as to affect the property rights of the PETITIONERS in this county.

11.    BANK has done banking business in this county for over 14 years and maintains many places of business in this county

12.    BANK has acted as trustee of the trusts in question in this matter in this county and has exercised control of trust funds and bank deposits of the PETITIONERS in this county.

13.    The Orphans Court has jurisdiction of this case because it involves the validity of powers of attorney given to PETITIONERS, two inter-vivos trusts that no longer have employees as beneficiaries, the operations of a fiduciary which is a Pennsylvania nonprofit corporation, the powers of that corporation's sole director, and matters sufficiently related to the traditional jurisdiction of the court. 20 Pa. C.S. §§ 711, 712. [Exhibit 13 Powers of Attorney; Exhibits 3, 5 and 7, Master Trust Agreements].

## III. PARTIES

Scan 10/26/2009

14.    PETITIONER PennMont Benefit Services, Inc. ("PennMont") is, and at all times mentioned in this complaint was, a Pennsylvania corporation doing business at 200 W. 4th St., Bridgeport, Montgomery County, Pennsylvania.

15.    PETITIONER PennMont is the administrator of the Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust [a/k/a REAL VEBA] and the Single Employer Welfare Benefit Plan [a/k/a SEP] Trust. [Exhibit 1 Bonney Aff; Exhibit 9 Koresko Aff; Exhibit 12 Townsend Aff.].

16.    PETITIONER Penn Public Trust ("PPT"), a Pennsylvania nonprofit corporation, is the designated trustee designee of the aforesaid Trusts, operating with the knowledge and permission of the Pennsylvania Department of Banking.  PPT operates through the employees of Koresko and Associates, PC, at 200 W. 4th St., Bridgeport, Montgomery County, Pennsylvania. [Exhibit 9 Koresko Aff; Exhibit 18 PPT Articles of Incorporation and Conversion].

17.    PETITIONER Koresko & Associates, PC ("KAPC" or "the law firm:) is, and at all times mentioned in this complaint was, a Pennsylvania corporation doing business at 200 W. 4th St., Bridgeport, Montgomery County, Pennsylvania.

18.    PETITIONER John J. Koresko, V ("JK") at all times mentioned in this complaint was, an adult individual doing business at 200 W. 4th St., Bridgeport, Montgomery County, Pennsylvania

19.    JK is an attorney and Certified Public Accountant, having practiced before this Honorable Court since 1986.

20.    JK formed the subject Trusts and Plans.  John Koresko is the incorporator and president of Penn-Mont. JK is the incorporating vice president, secretary and treasurer of Penn Public Trust, Trustee.  [Exhibit 2 SCM at p. 2 fn3; Exhibit 9 Affidavit of John J. Koresko, V, Esquire].

Scan 10/26/2009

20.    Nonparty Lawrence Koresko ("LK") is, and at all times mentioned in this complaint was, an adult individual doing business at 200 W. 4th St., Bridgeport.

21.    LK and JK are shareholders of PennMont as follows: JK 70% and LK 30%.

22.    JK is the sole shareholder of KAPC, and its sole officer and director.

23.    JK is the sole director of PPT.

24.    PennMont, JK, KAPC, and PPT are referred to herein as the "PETITIONERS," the 'Koresko PETITIONERS," and unless the context otherwise requires, "Koresko."

25.    RESPONDENT TD Bank ("BANK"), is on information a publicly-held corporation engaged in the business of banking; and presently maintains more than 20 branch offices in Montgomery County, Pennsylvania, as well as nationwide.

26.    BANK has been in the business of banking in this County, d/b/a Commerce Bank and TD Bank, since the early 1990s; and has been in a banking relationship with PETITIONERS for over a decade, principally through Bank's branches in Whitpain Township and King of Prussia, Pennsylvania.

27.    Over the course of the relationship with PETITIONERS, BANK has enjoyed the benefit of cumulative deposits of over $300 million attributable to the business of PETITIONERS.

### IV.    NATURE OF THE TRUST ARRANGEMENTS

28.    PennMont brings this action in its own right and as Plan Administrator on behalf of the Single Employer Welfare Benefit Plan Trust ("SEWBPT"); the Regional Employer's Assurance Leagues Voluntary Employees' Beneficiary Association Trust ("REAL VEBA Trust") and Penn Public Trust ("PPT") (collectively, the "Trusts")..

Scan 10/25/2009

29.    REAL VEBA is a trust created under the laws of Pennsylvania in 1996. [Exhibit 2 *REAL VEBA v. Sidney Charles Markets*, 2006 U.S. Dist. LEXIS 50725 (E.D. Pa. 2006) (hereinafter "SCM")]

30.    SEWBPT is a trust created under the laws of Pennsylvania in 2002. [Exhibit 3 SEWBP Master Trust Document].

31.    PPT is a trust created under the laws of Pennsylvania in 1992 converted to a non profit corporation in 1993, as set forth above.

32.    The operative documents and trust arrangements for REAL VEBA and SEWBPT, virtually identical, require an employer to consent to be a party to the Master Trust Agreement, the Plan Document, and execution of an Adoption Agreement. Each participant must sign a participation agreement which authorizes Power of Attorney in PETITIONERS. [Exhibits 3 through 6 Master Trust and Plan documents; Exhibit 1 Bonney Aff. ¶ 24; Exhibit 4 Plan Document.4.01; Exhibit 13 Adoption Agreements and Powers of Attorney in PETITIONERS].

33.    The Trusts pool assets for the benefit of business owners. There are no rank and file ("common law") employee participants. [Exhibit 11 Plan Amendment].

34.    The Plan provides an unsecured and unvested promise of a death benefit – a bare expectancy interest. [Exhibit 1 Bonney Aff. ¶ 11; Exhibit 4 Plan Document. 9.03].

35.    Since the original purpose was to provide death benefits on a tax advantaged basis the arrangement is intentionally designed not to permit beneficiaries any interest or control over Trust assets. No contributions may revert to the employer. [Exhibit 1 Bonney Aff. ¶9]. No participant may seek distribution of Trust assets unless a bona fide death benefit claimant. [Exhibit 1 Bonney Aff. ¶29; Exhibit 3 Trust Document Article 7].

Scan 10/26/2009

36.     Amounts contributed by Employers are used by the Trustee to purchase life insurance,

but any asset can be used to pay out a claimed benefit and no asset is directly tied to any one

participant.

37.     The Administrator has wide discretion provided by the Trust and Plan Documents,

including interpretation of documents, death benefit payout options, delegation of duties, source

of benefits, releases required for payment, determination of distribution if due, power to amend,

involuntarily terminate an employer, provide statement of account, limitations on death benefit

payout, methodology and valuation of trust fund.[1] [Exhibit 1 Bonney Aff. ¶¶29-40 and Trust

---

[1] 2.02    Interpretation - Wherever in the Trust discretionary powers are given to any party, or wherever any interpretation may be necessary, such powers may be exercised or the interpretation shall be made in a nondiscriminatory manner.
    5.02    Life benefit: . . . Such Benefit may be payable upon the death of the Participant in a series of monthly payments not to exceed 120 or as otherwise provided in an annuity purchased by the plan or as agreed by the Beneficiary and the Administrator, in the Administrator's sole and absolute discretion.
    2.05    Delegation of Duties - The Plan Administrator shall have sole discretion to delegate any and all Fiduciary responsibilities under the Trust (other than those of the Trustee) to designated persons
    5.04    Source of Benefits - The amount of Benefit shall to the extent thereof, be paid out of Contracts and out of other funds held by the Trustee for the payment of benefits under the Plan, in the discretion of the Trustee
    10.11    Receipt and Release for Payment. Any payment to a Participating Employee, his legal Representative, beneficiary or other permitted party, shall to the extent thereof, be in full satisfaction of claims hereunder against the Plan, the Trustee, Plan Administrator, and Employer, any of whom may require such Participating Employee, his legal representative, beneficiary, or other payee to execute a receipt and release in such form as shall be required by the Trustee or Plan Administrator, in its sole and absolute discretion. In the event of termination of participation in the Plan, the Trustee or Plan Administrator may require such a receipt and release from the Employer.
    9.02(c)    Nothing herein shall be interpreted to require distribution under section 9.02(b) of forfeitures or other amounts classified by the Trustee or Plan Administrator as unallocated experience gains or losses for the benefit of the entire Trust; and the determination of amounts distributable hereunder by the Trustee or Plan Administrator shall be final unless determined by to be arbitrary and capricious by a court of competent jurisdiction.
    9.03 (b) The Administrator shall have the right to amend this Plan, in its sole discretion, from time to time and to amend or cancel any such amendments. Without limiting the scope of the foregoing, such amendments may include modification of the status of this plan for federal income tax purposes if future developments in the law indicate the utility of such change.
    9.04    Termination - The Employer shall have the right to terminate its participation in this Plan by delivering written notice of termination to the Trustee, at least thirty (30) days prior to the proposed date of termination. The Trustee shall have the right to involuntarily terminate the Employer's participation in this Plan for any reason which would cause the Plan and Trust not to qualify under Section 419, or for any other action attributable to the Employer or its Employees which the Trustee, in its sole and absolute discretion, determines to be conduct detrimental to this Plan or Trust, including but not limited to, false certification in the Adoption Agreement or other misrepresentation.
    8.04    Statement of Account - As soon as practicable after the end of each Plan Year, but not later than 120 days, the Plan Administrator shall present to each Participating Employer a statement of the account showing the credit to his account at the beginning of such Year, any changes during the Year, the accrued Benefit at the end

Scan 10/26/2009

38.    Modification of the Trust is a modification of the Plan, which merges into the Trust.

[Exhibit 3 Trust Document 10.1.] The provisions of the Plan documents are all incorporated by

reference into the Master Trust document. [Exhibit 4 Plan Document 10.22]. The Trust

document controls the Plan document and they are construed together.[2]

39.    The Trustee's role is that of directed trustee, being subject to the direction of PennMont

in all material respects. [Exhibit 3 Trust Document Article III]

40.    In 2002, CTC executed a Custodial Agreement with Koresko & Associates, P.C.

(hereinafter "the law firm") in which it delegated to the law firm and its designees possession of

all insurance policies and other powers of the Trustee. Furthermore, the Custodial Agreement

gave the law firm the right to ignore any directions or requests of CTC in the discretion of

---

of the Year, and such other information as the Employer may determine. *However, neither the maintenance of accounts, the allocation of credits to accounts, nor the statement of account shall operate to vest in any Participating Employee of a Participating Employer any right to interest in or to any asset of the Trust except as the Trust specifically provides. The Plan Administrator's determination of the account balances shall be final unless deemed arbitrary and capricious by a court of competent jurisdiction.*

　　　5.10    General Limitation on Benefit Payment - Notwithstanding any provisions of this Plan and Trust, a Participant who has less than ten (10) years of participation shall forfeit any benefit payable hereunder if it is determined by the Plan Administrator that he has engaged in a disqualifying act with respect to the Employer, Employees, Plan or Trust. A Participant shall be deemed to have engaged in a disqualifying act if he is determined by the Plan Administrator to have: (1) been guilty of committing theft, fraud or embezzlement with respect to the Employer; or (2) committed any criminal act or malicious act [not rising to the level of a crime] which damages the person or property of the Employer, Employees, Plan or Trust. The judgment of the Plan Administrator as to whether a Participant has committed a disqualifying act shall be final, unless made without evidence to support such judgment.

　　　The Administrator has the complete discretion to determine the value of any amounts distributable from the trust and to classify any amounts as surplus which need not be distributed as benefits:

　　　8.03    Method of Valuation - In determining the fair market value of assets other than securities for which trading or bid prices can be obtained, the Trustee or Plan Administrator may appraise such assets itself, or in its discretion, employ one or more appraisers for that purpose and rely on the values established by such appraiser or appraisers.

　　　8.02    Valuation of the Trust Fund - The Administrator shall direct the Trustee, as of each Anniversary Date, and at such other date or dates deemed necessary by the Administrator, herein called "valuation date", to determine the net worth of the assets comprising the Trust Fund as it exists on the "Valuation date" prior to taking into consideration any contribution for the Plan Year. In determining such net worth, the Trustee shall value the assets comprising the Trust Fund at their fair market value as the "valuation date" and shall deduct all expenses for which the Trustee has not yet obtained reimbursement from the Employer or the Trust Fund. *All policies and Contracts may be valued at $1.00 or other nominal value, and neither the Administrator nor Trustee shall be required to report changes in cash values.*

　[2] 10.21  Trust Agreements Control. - The Plan and the Trust are both parts of a single integrated welfare benefit program and shall be construed together. In the event of any conflict between the provisions of this Plan

Scan 10/26/2009

KAPC. [Exhibit 10 Custodial Agreement at ¶¶ 10; 12; Exhibit 16: Testimony under Oath of Lowell Gates, Esquire, Chairman, CTC at pp. 40:15-25; 41:1-12]. CTC's Chairman Lowell Gates, Esquire, testified under oath that PennMont directed CTC's activities. [*Id.*] and that no directions given by PennMont were objectionable to CTC [Exhibit 16: Testimony under Oath of Lowell Gates, Esquire, Chairman, CTC at pp. 42:1-11

41.   The Trusts gave the Plan Administrator the power to "determine all questions arising in connection with the administration, interpretation and application of the Plan, including questions of eligibility, and status and rights of Participating Employees and Beneficiaries and any other person hereunder and the payment and/or provision [of] benefits hereunder." [Exhibit 3 Trust Document 2.02, 5.02, 2.05, 5.04, 10.11, 9.02(c)].

42.   The Plan Administrator also determines the amount each employer contributes to the Trust. [Exhibit 4 Plan Document. Article 3]

43.   Trust provisions show that the Plan Administrator controls Employer contributions, Trust cash reserves; payment of Plan and Trust expenses, legal actions and all other administrative matters.[3]

---

document and the Trust document adopted in connection herewith, the terms of the Trust document shall control; and the terms of the Trust shall be considered incorporated by reference into this Plan.

[3] h. To determine from time to time the amount and frequency of contributions hereto at which each Participating Employer shall make in order to defray the cost of providing benefits to its Participating Employees in accordance with the Plan;

i. To determine and establish the level of cash reserves of the Trust as may be necessary, appropriate and/or desirable for the proper execution, administration and accomplishment of the purposes and objectives of the Plan and Trust;

j. To direct and authorize the payment of the Trust Fund in accordance with the terms, conditions and purposes, but subject to the restrictions and prohibitions, of the Plan and Trust Agreement;

k. To adopt such rating Plans for insurance purchased hereunder as may be necessary or desirable;

l. To offset any portion of all experience rating refunds on insurance benefits purchased in accordance with the Plan against the obligations of Participating Employer to make contributions becoming due hereunder.

m. To determine all questions arising in connection with the administration, interpretation and application of the Plan, including questions of eligibility, and status and rights of Participating Employees and Beneficiaries and any other person hereunder and the payment and/or provision benefits hereunder;

n. To decide any dispute or question arising under the Plan;

Scan 10/26/2009

44.    In consideration for these powers over the Trustee, the Administrator indemnifies the

Trustee[4] and may with absolute discretion amend the Trust Agreement simply by notifying the

Trustee in writing, including removing the Trustee[5], reviewable only for abuse of discretion.

---

o. To designate from time to time any person, firm or corporation to serve as agent for the service of legal process under the Plan;

p. To do all other acts and things, and in connection therewith to execute all such instruments and documents, as may be necessary, appropriate, desirable or convenient for the exercise of the powers granted hereunder or for the accomplishment of the purposes and objectives of this Trust.

8.2    Plan Expenses.  With respect to expenses incurred by Persons other than the Trustee, the Plan Administrator may direct the Trustee to pay from the Trust any other administration expenses of the Plan.  Each direction to the Trustee under this Section shall constitute a representation and warranty by the Adopting Employer, Advisory Committee., and Plan Administrator that such direction is in accordance with applicable law, the terms of the Plan, and the terms of this Trust Agreement, and the Trustee shall have no duty to make any independent inquiry or investigation as to any of the foregoing before acting upon such direction or to see to the application of any monies paid over.

[4] 8.5    Indemnification of Trustee.  In consideration of the Trustee agreeing to enter into this Agreement, the Plan Administrator and Adopting Employer hereby agree to indemnify and hold harmless the Trustee, individually and as Trustee, and the Trustee's parent and affiliates and each of their directors, officers, employees, subsidiaries and agents ("Indemnified Parties") from and against all amounts, including without limitation taxes, expenses (including reasonable counsel fees), liabilities, claims, damages, actions, suits, or other charges, incurred by or assessed against each Indemnified Party ("Claims"), in advance, unless it is alleged and until it is conclusively determined that such Claims arise from the Trustee's own negligence or willful breach of its obligations specifically undertaken pursuant to this Agreement.

9.1    Resignation or Removal.  The Trustee may be removed by PM at any time upon ninety (90) days notice in writing to the Trustee.  The Trustee may resign at any time upon ninety (90) days notice in writing to the PM.

9.2    Designation of a Successor.  Upon the removal or resignation of the Trustee, the termination of the Trust or a termination of the Trust Agreement as described in Section 9.2, or any event other than a complete termination of the Plan, the Plan Administrator shall appoint a successor trustee for the Plan which shall have the same powers and duties as those conferred upon the Trustee hereunder and upon acceptance of such appointment by the successor trustee, the Trustee shall assign, transfer and pay over the Trust or part thereof, as the case may be, to such successor trustee.  Resignation shall not be effectuated unless and until a successor trustee has been appointed by the Plan Administrator.  Any expenses incurred by the Trustee in connection therewith shall be charged to and paid from the Trust as an expense of administration.

[5] 10.1    Amendment.  Subject to the restrictions set forth in section 3.5, PM may at anytime and from time to time amend, in whole or in part, any or all of the provisions of this Trust Agreement by notice thereof in writing delivered to the Trustee; provided, however:

(a) No amendment shall be effective which shall attempt to cause any of the assets of the Trust to be used for or diverted to purposes other than for the exclusive benefit of those covered under the Plan and no funds contributed to the Trust or any assets for the Trust shall ever revert to or be used or enjoyed by the Adopting Employer except as permitted under the Plan and applicable laws and regulations; ·

(b) No amendment shall have any retroactive effect so as to deprive any Person of any benefits already accrued;

(c) No amendment (including, for the purpose of this Section 9.1, any provision of the Plan, incorporated by reference in this Trust Agreement) which affects the rights, duties or responsibilities of the Trustee may be made without its prior written consent.

10.2    Termination.  Subject to the restrictions set forth in Section 3.5 the Employer may terminate this Trust Agreement by notice in writing thereof delivered to the Trustee, or in the event of disqualification under Section 10.2.

Scan 10/26/2009

45.    The Administrator may delegate its duties to others to perform, such as the law firm.[6]

## V.    BANK's ILLEGAL SEIZURE OF FIDUCIARY FUNDS

46.    TD Bank f/k/a Commerce Bank ("Bank") refuses to surrender the amounts in the

PETITIONERS' bank accounts and follow PETITIONERS' directions, with respect to funds

presently on deposit or detained by BANK; including amounts held in an unmistakable escrow

account of approximately $34,000,000. [Exhibit 13 Letter of TD Bank].

47.    At approximately 4:50 p.m. on October 20, 2009, BANK's New Jersey attorney Tod S.

Chasin, faxed to the office of PETITIONER Koresko a letter notifying Koresko the BANK's

"freeze" of approximately $34 million of money in PETITIONER's account, $25 million of

which had been ordered by PETITIONER Koresko transferred to ING Bank about two weeks

earlier. Chasin's letter is incorporated herein as Exhibit 13.

48.    Attached to the Chasin letter are a number of checks from insurance companies deposited

into PETITIONER's account, which are endorsed "For Deposit Only" and with the account

number of the account.

---

10.3    Trustee's Authority to Survive Termination. Until the final distribution of the Trust, the Trustee shall continue to have and may exercise all of the powers conferred upon it by this Trust Agreement.

12.3    Plan Administrator. Unless otherwise specifically stated in this Trust Agreement, the Trustee may take directions from the Plan Administrator in all matters relating to the Plan and shall be further fully protected in acting upon any notice or direction received from the Plan Administrator. Unless otherwise specifically stated in the notice or direction, notice or direction from the Plan Administrator shall be deemed to be notice or direction from the Employer.

12.7    Fiduciary Discretion. Unless otherwise provided, any Plan Administrator acting hereunder shall be deemed to act pursuant to its absolute discretion, and any such action may be reviewed only for abuse of discretion.

[6] 2.05    Delegation of Duties - The Plan Administrator shall have sole discretion to delegate any and all Fiduciary responsibilities under the Trust (other than those of the Trustee) to designated persons. Any such delegation shall be communicated in writing to the Employer, the Plan Administrator, the Trustee, the Insurer and each Participant and Beneficiary. The Trustee may appoint an investment manager who shall be a Fiduciary with the power to manage, acquire or dispose of any asset of the Trust, and who shall be a registered investment advisor, bank, individual or insurance company who has acknowledged in writing that he is a Fiduciary with respect to the Trust. Such an appointment shall be communicated in writing to the Employer, the Plan Administrator, the Trustee, the Insurer and each Participant and Beneficiary. The Plan Administrator and the Trustee may additionally delegate

Scan 10/25/2009

49.    The account in question at BANK is clearly marked "escrow account." [Exhibit 19].

50.    The endorsements on the checks were applied by an employee of Koresko Law Firm,

P.C. in the ordinary course of representing PETITIONERS, as part of PETITIONERS fiduciary

activities with respect to the Trusts – activities which have transpired with BANK's predecessor,

Commerce Bank, since the mid 1990s.

51.    BANK's New Jersey attorney Tod S. Chasin, informed Koresko in September 2009 that

the BANK had exercised its right to eject Koresko and his affiliates from all banking

relationships with BANK.

52.    In September and October, 2009, Koresko attempted to move money out of BANK,

consistent with the demand of BANK, by opening up several accounts at ING Bank (because

ING had a maximum dollar limit on any new account). All accounts were marked with the

designation "ea" to denominate the path from the escrow account formerly with BANK. [Exhibit

19].

53.    BANK, through Chasin or otherwise, unilaterally and without permission contacted ING

and caused all amounts that PETITIONERS had transferred to be re-transferred back to BANK;

and then BANK "froze" the amounts. [Exhibit 13 TD Letter].

54.    At no time did BANK, ING or any other person disclose to PETITIONERS that the

aforesaid interference with PETITIONER's transfers was going to happen, could happen, or

might happen, until Chasin faxed the letter of October 20.

55.    On information and belief, the BANK made false and defamatory statements about the

PETITIONERS and their business in order to induce ING to empty the ING accounts and send

the amounts back to BANK without notice.

the performance of specific ministerial responsibilities. Any reference in the Plan and Trust to "Trustee" shall also
mean "Plan Administrator" when a duty, privilege or immunity has been delegated.

Scan10/26/2009

56.    Chasin then made demands on PETITIONERS that were totally inconsistent with the deposit arrangements PETITIONERS enjoyed with Commerce Bank for over a decade, froze trust funds, and have perpetrated all manner of harm and prejudice against the PETITIONERS and those in privity with them.

57.    At approximately 5:10 p.m. on October 20, 2009, PETITIONER Koresko telephoned BANK's New Jersey attorney Tod S. Chasin, who had informed Koresko of BANK's "freeze" of money in PETITIONER's account. Chasin refused to discuss the matter at all except to instruct Koresko to respond in writing. Chasin was informed that approximately $10,000 per day interest was being charged on the money that the BANK refused to transfer; and despite knowledge of the damage, directed Koresko to submit a response in writing and that the matter would be dealt with according to Chasin's schedule. PETITIONERS responded in writing. Thus, PETITIONERS made a good faith effort to reach accord, but have been intentionally rebuked and threatened with litigation. [Exhibit 19 TD Bank Correspondence]

58.    Chasin notified PETITIONERS that BANK would not permit PETITIONERS to exercise the legal dominion over those funds vested in PETITIONERS unless Chasin and BANK "were satisfied" with PETITIONERS' evidence of authority. [Id.

59.    Prior to the actions described in this complaint, despite a relationship spanning over a decade, BANK has never questioned the authority of the attorney or the other PETITIONERS. [Exhibit 19 Correspondence with Patrick Owens re PETITIONERS' authority].

60.    BANK's employee, Patrick Owens, manager of the Whitpain branch, admitted in emails sent in July and August 2009 that Bank was in possession of documents sufficient to allow Owens to open PETITIONERS' fiduciary accounts and remove CTC as a signatory; and subsequently acted on the basis of such information. [Id.]

Scan 10/26/2009

61.    Despite having served as Trustee, and admitting the possession of applicable documents, and having seen the conclusions of court who have evaluated the powers of PETITIONERS, and having seen the Custodial Agreements giving authority to PETITIONERS, BANK has refused to grant PETITIONERS access to the funds. [Exhibit 7 Commerce Bank Master Trust Agreement; Exhibit 2 SCM].

62.    Furthermore, PETITIONERS are unable to pay valuable and potentially irreplaceable life insurance policy premiums on the lives of persons who may be entitled to benefit from the Trusts.  On October 21, 2009, F&M Trust Co., the former trustee of the Trusts, refused to pay $989,236.31 for such premiums and other expenses from approximately $2.4 million of Trust funds it holds, some of which policies are pending lapse, claiming fear that performing its duties as directed Trustee, pursuant to the instructions of the Plan Administrator, would somehow constitute a breach of fiduciary duty.  [Exhibit 14 Failure of F&M to Honor Requests and Exhibit 15 Policies pending Lapse or Loss of Guarantees].

63.    PETITIONERS previously filed a writ of summons against F&M Trust Co., docketed at No. 09-24077 in this Court.

64.    PETITIONERS incorporate by reference their PETITION FOR EMERGENCY SPECIAL AND PRELIMINARY INJUNCTION, the volume of Exhibits, and the affidavits of Jeanne D. Bonney, Esquire, John J. Koresko, V, Esquire, and Larry Townsend filed contemporaneously herewith.

65.    In the Volume of Exhibits submitted to the Court, PETITIONERS have produced copies of Participation Agreements, each of which corresponds to each insurance policy associated with the deposits falsely alleged by BANK to be tainted. [Exhibit 13 Participation Agreements]

66.    As described in Article 3.07 of the Master Plan document, no person is entitled to

Scan 10/26/2009

participate in the trusts unless he signs a participation agreement in form suitable to the administrator.[7] [Exhibit 4 Plan Document; Exhibit 13 Participation Agreements].

67.     Each Participation Agreement is signed by the insured of each policy and names JOHN J. KORESKO as attorney in fact. [Exhibit 13 Participation Agreements]

68.     The Participation Agreements contain an irrevocable power of attorney from each insured [even though the insured has only a contingent death benefit in the Trusts] giving John Koresko all authority with respect to operation and management of the policies. [*Id.*]

69.     The Powers of Attorney are agreed to be irrevocable, having been coupled with an interest, in that PETITIONERS would not assumed the administrative duties under the TRUSTS and allowed the insureds to receive benefits without execution of same.

70.     All insurance policies purchased for use by the Trusts are titled in the name of the trustee; but the trust and associated master plan documents specify that the trustee is purely directed and virtually all fiduciary powers under the trusts are exercised by the PETITIONERS.  [Exhibit 3 Plan Document Article 7].

71.     To make matters clearer, the Trust documents state that the word "trustee" shall be interpreted to mean "administrator" unless the context clearly otherwise required a contrary reading. [Exhibit 4 Plan Document 2.05].

72.     Moreover, in 2002, Community Trust Company, the former institutional trust company

---

[7] 3.01(e)Termination of Plan Participation - An Employee who otherwise meets the requirements for eligibility and participation contained herein shall be a participant in this plan only during the period the Employer participates in the plan. *Upon termination of the Employer's participation, whether voluntary or involuntary, the Employee shall have no further right to the benefits hereunder, including without limitation, those benefits for which claims have been made but not yet paid on the date participation terminates.*
       3.07     Voluntary Participation - The participation by an Employee shall be voluntary, if Participant contributions are required under the Adoption Agreement. Any Employee who, when first eligible, does not elect to participate within the time provided may participate as of any subsequent Anniversary Date by meeting the requirements of Eligibility under the Adoption Agreement and by making the required contributions as of such subsequent Date. *Each eligible Employee shall complete an Employee Participation Agreement on such forms as may be provided by the Plan Administrator, in order to participate.*

Scan10/26/2009

for the Trusts, granted to Koresko & Associates, and its delegates (the PETITIONERS) all rights to manage, demand, and apply all cash values in all policies held by the trusts. [Exhibit 10 Custodial Agreement]

73.    The master trust, plan, participation agreements, and custodial agreements are unambiguous and unequivocally vest all authority to manage the assets of the Trusts in the PETITIONERS. [Exhibit 1 Bonney Aff.]

74.    There is sufficient evidence in the pleadings and affidavits of parties and third persons to support the issuance of the requested by PETITIONERS.

75.    The Petitions, affidavits, and exhibits filed with this court show egregious conduct of the BANK. This case is especially outrageous because BANK was formerly trustee of the trusts in question, is fully aware of the contents of the plan and trust documents it now seeks to question, processed legal and fiduciary business under the direction of PETITIONERS for approximately 14 years, and otherwise knows that the authority of PETITIONERS to act with respect to their own accounts is not in question.

76.    PETITIONERS believe that New Jersey attorney Chasin threatened PETITIONER with expensive and groundless litigation when on October 20 he said that BANK would "pursue other remedies" if it did not receive the tome of information it demanded without cause or right

77.    BANK suffers no detriment from the requested injunction as it only pertains to the rights of PETITIONERS to use bank accounts PETITIONERS have been operating for over a decade and money that BANK has absolutely no privilege to hold or freeze or control. Furthermore, BANK's activities evidence a prima facie violation the Unfair Trade Practices and Consumer Protection Law of Pennsylvania and others states in which BANK does business, as it applies to

PETITIONER and account holder John J. Koresko and the hundreds of other individuals he represents or who benefit from the PETITIONERS' fiduciary positions.

78. BANK has no conceivable explanation for its actions under the Uniform Fiduciaries Act or the Uniform Commercial Code or the Pennsylvania Banking Act when an attorney and known fiduciary makes deposits. *Springfield Twp. v. Mellon PSFS Bank*, 586 Pa. 1; 889 A.2d 1184 (2005).

79. PETITIONERS need immediate protection from further damages that otherwise will ensue from the past and proposed conduct of BANK, including the intentional destruction of or interference with the business relationships and activities of PETITIONERS. To date, as seen in the letter of BANK's New Jersey attorney Chasin, BANK has obviously interfered with the installation and funding of interest-bearing accounts attempted to be opened by PETITIONERS at ING Bank. The court can conclude that ING Bank would not have cancelled deposits without either the stated or implied false statements of BANK or its agents.

80. The relief requested is appropriate to restrain the Bank from interfering with the everyday, usually unquestioned, rights of depositors to have access to monies deposited in their bank accounts and to apply them in the normal flow of commerce, which is a goal undoubtedly in the public interest of this Commonwealth.

81. Without the requested relief, PETITIONERS face the probability of lawsuits from insureds of the policies in danger of lapse, the proceeds of which are necessary for any claim of benefits. In most cases, the changes to the insurance marketplace will render irreplaceable the features of certain policies, like the guaranties involved in policies administered by PETITIONERS.

82. The actions of BANK are also palpably illegal under the Pennsylvania Banking Code.

Scan 10/26/2009

83.    In the present case, it is not possible to know the full degree of damage [not compensable in money] caused by BANK's actions, for example, whether: (a) beneficiaries are presently uninsurable so as to make replacement of a lapsed policy academic and thus leave a permanent financial impact on an insured's family; (b) BANK has damaged PETITIONERS' commercial reputation by notifying ING that monies transferred (at the BANK's demand) were somehow tainted; (c) there is damage because BANK forced PETITIONERS to make known to the court in this proceeding information that would normally be privileged from disclosure under the Gramm Leach Bliley Act, the Right to Financial Privacy Act, and other law; (d) BANK has damaged PETITIONERS because PETITIONERS had to disclose the "freeze" to F&M Trust in an unsuccessful attempt to secure payments for insureds.

84.    The actions of BANK have created an impending loss of business opportunity and established business relations to the detriment of PETITIONERS that will result in incalculable damage and constitutes "irreparable injury."

## CAUSES OF ACTION
## COUNT I -UNJUST ENRICHMENT

85.    PETITIONERS incorporate by reference and re-alleges the allegations set forth in the foregoing paragraphs.

86.    BANK wrongfully diverted income and benefits of the property of PETITIONERS.

87.    The economic advantages inuring to BANK, to the exclusion of PETITIONERS, are unfair and the product of bad faith, deceit, and betrayal of the interests PETITIONERS and those persons expecting to benefit from the trusts

88.    If permitted to retain, operate and prosper from their improper uses of PETITIONERS' property, the BANK will be unjustly enriched.

Scan 10/26/2009

89.     PETITIONERS have no adequate remedy at law.

## COUNT II –TURNOVER and RESTITUTION

90.     PETITIONERS incorporate by reference and re-alleges the allegations set forth in the foregoing paragraphs.

91.     BANK wrongfully diverted income and benefits of the property of PETITIONERS.

92.      The economic advantages inuring to BANK, to the exclusion of PETITIONERS, are unfair and the product of bad faith, deceit, and betrayal of the interests PETITIONERS and those persons expecting to benefit from the trusts

93.     If permitted to retain, operate and prosper from their improper uses of PETITIONERS' property, the BANK will be unjustly enriched.

94.     PETITIONERS are entitled to an order compelling bank to turnover all of PETITIONERS' property, any profits, and such other amounts as equitable.

95.     PETITIONERS have no adequate remedy at law.

## COUNT III -ACCOUNTING AND CONSTRUCTIVE TRUST

96.     PETITIONERS incorporate by reference and re-alleges the allegations in the foregoing paragraphs as if fully set forth herein.

97.     BANK is accountable to PETITIONERS for any profits that they have earned, or may earn, through the usurpation of PETITIONERS' property.

98.     As a consequence of the actions of BANK, PETITIONERS are entitled to an accounting from BANK, and to the imposition of a constructive trust upon any profits that BANK may have earned through the usurpation of property or business opportunities from PETITIONERS.

## COUNT VI – PERMANENT INJUNCTIVE RELIEF

99.     PETITIONERS repeat and reallege each and every allegation contained in the foregoing

Scan 10/26/2009

paragraphs as if fully set forth herein

100.    BANK intended to take actions to harm the PETITIONERS and take their property in violation of law.

101.    PETITIONERS' right to relief is clear.

102.    PETITIONERS have no adequate remedy at law for some or all of the acts perpetrated by BANK

103.    PETITIONERS are entitled to a permanent injunction ordering BANK to immediately surrender PETITIONERS' property without condition or impediment.

### COUNT V –CONVERSION
### (Common Law and Uniform Commercial Code)

104.    All of the preceding paragraphs are incorporated by reference.

105.    BANK either through negligence or intention has converted the personal property of PETITIONERS to their own use without compensation to PETITIONERS

106.    As a direct consequence of this conversion and unauthorized use of property PETITIONERS have sustained and economic loss.

107.    PETITIONERS request the entry of judgment in their favor and against the BANK in an amount to be determined at the time of trial.

### COUNT VI -DECLARATORY JUDGMENT

108.    PETITIONERS repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein

109.    This action also arises under Pennsylvania's Declaratory Judgment Act.

110.    PETITIONERS are entitled to declaratory relief that BANK had no just cause to detain or deprive PEITITONERS of their money or property.

111.    PETITIONERS are entitled to declaratory remedial relief as set forth herein.

### COUNT VII -AIDING AND ABETTING

112.    PETITIONERS repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

113.    From the surrounding circumstances, BANK knew or should have known that others were breaching their duties to PETITIONERS or the persons intended to benefit from the maintenance of the Trusts.

114.    BANK, even without direct duties, took possession of fiduciary funds, and then aided and abetted the actions of others who breached their fiduciary duties to the trust beneficiaries which PETITIONERS have standing to represent...

115.    As a direct and proximate result of the aiding and abetting activities of BANK, PETITIONERS and persons in privity with them were damaged and irreparably harmed.

### COUNT VIII -DEFAMATION

116.    All of the preceding paragraphs are incorporated by reference.

117.    In an effort to destroy the reputations of PETITIONERS and to discourage any further challenge to the BANK, BANK engaged in the practice of making inflammatory and untrue statements about Mr. Koresko, and his associates. All such statements by whoever made were uttered with the knowledge, encouragement and approval of all BANK.

118.    For example, BANK in October or September 2009, communicated with ING Bank, told ING Bank that funds transferred to ING might be tainted with fraud, and caused ING Bank to return such funds.

119.    The aforesaid statements published by BANK were not then and are not true.

120.    The BANK knows that John Koresko is lawyer, and issued these defamatory

Scan 10/26/2009

statements knowing they were not true.

121.    The statements by BANK were not privileged or otherwise entitled to immunity.

122.    On information and belief, BANK made similar representations to representatives of

F&M Bank in October 2009.

123.    The BANK made similar statements in telephone calls with persons associated with the

Department of Labor in 2009, intending to publish information that was false and misleading and

likely to cause erosion of the good names of PETITIONERS in the business community and

among their peers.

124.    The publications were made with the knowledge and approval of all BANK and was done

with the specific intent to harm Mr. Koresko and the other PETITIONERS

125.    As a direct and proximate result of BANK' actions, PETITIONERS have been damaged.

*126.*    As John Koresko is a lawyer, such statements are libel *per se.*

127.    PETITIONERS request the entry of judgment in its favor and against the entire BANK

jointly and severally in an amount to be determined at the time of trial.

**COUNT IX**
**INTERFERENCE WITH PRESENT AND FUTURE ADVANTAGEOUS BUSINESS**
**RELATIONS**

128.    All of the preceding paragraphs are incorporated by reference.

129.    At all times pertinent hereto BANK knew that PETITIONERS had invested time, money

and energy in developing the Trusts and the administrative and fiduciary practices associated

therewith.

130.    As a direct consequence of this interference with contractual relations and other

advantageous present and future business opportunities set forth herein, PETITIONERS have

and will sustain economic loss, and intangible losses to their business reputations and good

Scan 10/26/2009

name.

131.    PETITIONERS have no adequate remedy at law.

132.    PETITIONERS request the entry of judgment in its favor in an amount to be determined at the time of trial.

133.    PETITIONERS request equitable relief to prevent irreparable harm caused by BANK.

## COUNT X – NEGLIGENCE

134.    The preceding paragraphs are incorporated by reference herein as though the same were set forth below in full.

135.    PETITIONERS argue this count in the alternative.

136.    BANK owed PETITIONERS a duty of reasonable care to deal with the PETITIONERS in a fashion consistent with the standards of the banking professions, and to maintain adequate computer, communications, personnel, accounting, training and other support systems necessary to fulfill its representations and to provide the services offered to the public.

137.    BANK' acts and/or omissions specified herein constitute a failure to use reasonable care to act in a fashion consistent with the standards of the applicable professions, and to maintain adequate computer, communications, personnel, accounting, training and other support systems necessary to fulfill its representations and to provide the services offered to the public, such as required by the governing professional standards and the common law.

## COUNT XI-MISREPRESENTATION

138.    PETITIONERS re-allege and repeat the allegations in the foregoing paragraphs as if fully restated herein.

139.    BANK made misrepresentations of material facts, or failed to communicate material facts when they were under a duty to due so; to wit, that if PEITIONERS MADE DEPOSITS,

that BANK would execute the instructions of PETITIONERS with respect to the surrender and transfer of those deposits.

140. BANK intended to induce PETITIONERS to act as a result of the misrepresentations

141. PETITIONERS acted to their detriment.

142. As a direct and proximate result of BANK' fraud, PETITIONERS have sustained damages, in an amount to be determined at the trial of this action

### COUNT XII – PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

143. PETITIONERS re-allege and repeat the allegations in the foregoing paragraphs as if fully restated herein.

144. The Pennsylvania Unfair Trade Practices and Consumer Protection Act ("PUTPCPL") provides a private right of action for damages, treble damages, attorney fees, and costs for the actions described herein, including violations of the Banking Code, Uniform Commercial Code, and other laws.

145. As a direct and proximate result of BANK' violation of the PUTPCCPL, PETITIONERS have sustained damages, in an amount to be determined at the trial of this action, treble damages, and are entitled to legal and injunctive relief.

### COUNT XIII et seq. – ALABAMA and OTHER STATES' DECEPTIVE TRADE PRACTICES ACTS

146. PETITIONERS re-allege and repeat the allegations in the foregoing paragraphs as if fully restated herein.

147. On information and belief Bank does business in each of the states of the United States set forth hereafter.

148. BANK's acts violated, and PETITIONERS is entitled to relief under, the Deceptive Trade Practices Act, Section 8-18-1, *et seq.*, Code of Alabama 1975. Section 8-19-11, Code of

Scan 10/26/2009

Alabama 1975 ("ADPA") which provides for civil penalties and reasonable attorney fees.

149.    BANK' acts violate, and PETITIONERS is entitled to relief under the Arkansas
Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*

150.    BANK' acts violate, and PETITIONERS is entitled to relief under, The Cartwright Act,
California Business & Professions Code sections 16700 *et seq.*, and the Unfair Practices Act,
California Business & Professions Code sections 17000 *et seq.*

151.    BANK's acts violate, and PETITIONERS is entitled to relief under the Connecticut
Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*

152.    BANK's acts violate, and PETITIONERS is entitled to relief under, the Delaware
Deceptive Trade Practices Act, 6 Delaware Code § 2501 *et seq.*

153.    BANK's acts violate, and PETITIONERS is entitled to relief under, the Florida Antitrust
Act of 1980, 542.15 Florida Statutes, *et seq.*, and the Florida Deceptive and Unfair Trade
Practices Act, 501.201

154.    BANK's acts violate, and PETITIONERS is entitled to relief under, the Massachusetts
Consumer Protection Act, G.L. c.93A s.2 *et seq.*

155.    BANK's acts violate, and PETITIONERS is entitled to relief under, New York General
Business Law §§ 340-347, 349 and also constitute fraudulent or illegal acts under New York
Exec. Law § 63(12).

156.    BANK's acts violate, and PETITIONERS is entitled to relief under, N.C. Gen. Stat. §§
75-1, -1.1, 2.1 and the common law of North Carolina.

157.    BANK's acts violate, and PETITIONERS is entitled to relief under, Rhode Island Code
of Laws §§ 6-36 *et seq.*

158.    As a direct and proximate result of BANK' violations set forth above, PETITIONERS

have sustained damages, in an amount to be determined at the trial of this action

## RELIEF REQUESTED

WHEREFORE, PETITIONERS pray that the Court will enter an order:

A. Ordering that BANK, their members, agents, successors, employees, directors and assigns are temporarily, preliminarily and permanently enjoined from interfering with the deposits in PETITIONERS' accounts;

B. Permanently enjoining the BANK from deviating from the instructions given by PETITIONERS with respect to deposited funds;

C. Declaring that BANK breached its duties to PETITIONERS under relevant law;

D. Declaring that BANK committed the violations of the PENNSYLVANIA and other states laws alleged herein, and that such violations are actionable under the Pennsylvania Unfair Trade Practices and Consumer Protection Law and the Unfair Trade Practices Laws of other states set forth in the PETITION;

E. Enjoining the BANK from further actions to harm the business or reputations of the PETITIONERS;

F. Compelling the BANK to pay equitable restitution to PETITIONERS and disgorge all profits or proceeds that BANK received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

G. Awarding compensatory, consequential, and punitive damages an any joined actions at law to PETITIONERS and against BANK in an amount to be determined at trial, together with pre-judgment and post-judgment interest;

H. Awarding statutory damages in an amount no less than treble the amount of other damages and awards;

I. Awarding PETITIONERS its attorneys fees, expert witness fees, expenses and costs in litigating this matter pursuant to specific statutory, common law and equitable authority;

J. Imposing a constructive trust or equitable lien on the property of BANK in favor of PETITIONERS;

K. Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

PETITIONERS respectfully demand trial by jury as to counts stated in law.

Scan 10/26/2009

## VERIFICATION

    I, Lawrence M. Koresko am an officer of a corporate PETITIONER in the above-entitled action. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge information and belief. I have read the foregoing Complaint and know the contents thereof. The foregoing is true of my own knowledge, except as to those matters, which are therein alleged on information and belief, and as to those matters, I believe them to be true.


10/23/09

DATED:

                                      Lawrence M. Koresko

Respectfully submitted,

DATED: 10/23/09

Attorney for PETITIONERS